## STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

## 17-995

**STATE OF LOUISIANA**

**VERSUS**

**CODY FICKLEN**

**********

ON APPLICATION FOR SUPERVISORY WRITS FROM THE
FIFTEENTH JUDICIAL DISTRICT COURT
PARISH OF VERMILION, NO. 60527
HONORABLE LAURIE HULIN, DISTRICT JUDGE

**********

**SHANNON J. GREMILLION
JUDGE**

**********

Court composed of Shannon J. Gremillion, Phyllis M. Keaty, and D. Kent Savoie, Judges.

**WRIT DENIED.**

**Keith Stutes**
**Fifteenth Judicial District Attorney**
**Roger P. Hamilton, Jr.**
**Assistant District Attorney**
**100 North State Street, Suite 215**
**Abbeville, LA 70510**
**(337) 232-5170**
**COUNSEL FOR:**
    **State of Louisiana**

**Lawrence C. Billeaud**
**Attorney at Law**
**706 West University Avenue**
**Lafayette, LA 70506**
**(337) 266-2055**
**COUNSEL FOR APPLICANT:**
    **Cody Ficklen**

**GREMILLION, Judge.**

Defendant, Cody Ficklen, was one of fourteen defendants indicted on August 26, 2016, for one count of conspiracy to racketeer, a violation of La.R.S. 15:1353(D), one count of racketeering, a violation of La.R.S. 15:1353(C), and one count of being a member of a criminal street gang, a violation of La.R.S. 15:1403. Defendant filed a Motion to Quash and a Motion for Bill of Particulars. Subsequently, he filed a First Amended Motion to Quash. Following hearings on Defendant's motions, the trial court denied Defendant's motion to quash the indictment with written reasons.

Defendant now seeks review of the trial court's ruling, alleging that the trial court erred when it denied his motion to quash the indictment because the indictment was insufficient on its face and the last alleged overt criminal act had prescribed pursuant to La.Code Crim.P. art. 572.

For the following reasons, we find no error in the trial court's ruling and deny the writ.

### ASSIGNMENT OF ERRORS ONE AND TWO

Defendant argues the trial court erred when it denied his motion to quash the State's indictment, which alleged involvement in a criminal enterprise and in a criminal street gang. Defendant also claims that the State failed to establish the existence of an enterprise. Defendant refers to the 1,338 pages received from the State in response to his Motion for Bill of Particulars, which contained a compilation of police reports upon which the indictment was based.

Defendant primarily argues in brief to this court that even if there was a criminal enterprise, the bill of indictment reflected that Defendant's alleged last overt act in furtherance of the alleged enterprise had prescribed pursuant to the statute of limitations found in La.Code Crim.P. art. 572(A)(1).

2

At the hearings on Defendant's motion to quash the indictment, Defendant argued that the indictment did not show that a criminal "enterprise" existed as defined by La.R.S. 15:1352(B); accordingly, the indictment was deficient on its face and should have been quashed. He further asserted that the indictment did not show he was involved with said enterprise when the indictment was filed on August 26, 2016. He pointed out that the indictment alleged he had committed seven overt acts in furtherance of the enterprise, the first occurring in December 2005, and the last occurring in March 2008. Therefore, Defendant asserted that the last of the acts alleged had prescribed pursuant to La.Code Crim.P. art. 572(A)(1), and the State, therefore, cannot show that he was a member of a criminal enterprise or a criminal street gang.

In Defendant's Motion to Quash, besides arguing the latest alleged overt act had prescribed in 2006, and, therefore, there was no proof he was a member of a criminal enterprise or a street gang, he also specifically argued that the State will not be able to prove the existence of a criminal enterprise. However, as noted, Defendant also alleges that the indictment and the State's response to Defendant's Motion for Bill of Particulars failed to prove that a criminal enterprise even existed. Accordingly, we address both allegations Defendant argued in his Motion to Quash and at the hearings on the motion.

The general grounds for a motion to quash are:

(1) The indictment fails to charge an offense which is punishable under a valid statute.

(2) The indictment fails to conform to the requirements of Chapters 1 and 2 of Title XIII. In such case the court may permit the district attorney to amend the indictment to correct the defect.

(3) The indictment is duplicitous or contains a misjoinder of defendants or offenses. In such case the court may permit the district attorney to sever the indictment into separate counts or separate indictments.

3

(4) The district attorney failed to furnish a sufficient bill of particulars when ordered to do so by the court. In such case the court may overrule the motion if a sufficient bill of particulars is furnished within the delay fixed by the court.

(5) A bill of particulars has shown a ground for quashing the indictment under Article 485.

(6) Trial for the offense charged would constitute double jeopardy.

(7) The time limitation for the institution of prosecution or for the commencement of trial has expired.

(8) The court has no jurisdiction of the offense charged.

(9) The general venire or the petit jury venire was improperly drawn, selected, or constituted.

(10) The individual charged with a violation of the Uniform Controlled Dangerous Substances Law has a valid prescription for that substance.

La.Code Crim.P. art. 532 (footnote omitted).

Regarding motions to quash, the first circuit stated in *State v. Flanigan*, 14-20, p. 1 (La.App. 1 Cir. 6/6/14) (unpublished opinion), *writ denied,* 14-1446 (La. 3/13/15), 161 So.3d 637, that:

> The motion to quash is essentially a mechanism by which to raise pretrial pleas of defense, i.e., those matters which do not go to the merits of the charge. *See* La.Code Crim.P. arts 531-34; *State v. Beauchamp*, 510 So.2d 22, 25 (La.App. 1st Cir.), *writ denied*, 512 So.2d 1175 (La.1987). It is treated much like an exception of no cause of action in a civil suit. *Beauchamp*, 510 So.2d at 25. In considering a motion to quash, a court must accept as true the facts contained in the bill of information and in the bills of particulars and determine, as a matter of law and from the face of the pleadings, whether or not a crime has been charged. While evidence may be adduced, such may not include a defense on the merits. The question of factual guilt or innocence of the offense charged is not raised by the motion to quash.

In its lengthy and detailed reasons for ruling, the trial court, after noting that "the number of overt acts committed are alleged to be committed by a criminal enterprise and not an individual," went on to state, in pertinent part:

4

The State has the burden of proof to demonstrate the essential element "enterprise" exist[s] at trial. A decision on whether or not the alleged facts in the indictment and the bill of particulars are in fact an enterprise would amount to judgment on the case's merits, thus a jury should decide whether the essential element "enterprise" actually exist. State v. Armstead, 14-36 (La.App. 4 Cir. 1/28/15)[,] [159 So.3d 502,] [*w*]rit denied[,] 15-392[ ] (La. 1/8/16), 184 So[.]3d 692. Therefore, the Defendants' motion to quash on the basis the State's bill of particulars does not sufficiently allege facts illustrating an "enterprise" is denied.

The second issue the court must address is whether the time limitation for the institution of prosecution has expired. Time limitations for racketeering prosecutions are set out in Louisiana Revised Statute[s] 15:1352 C. First, the statute states that predicate acts must have occurred after August 21, 1992. Next, it states that the last of such predicate acts must occur within five years after a prior predicate act of racketeering activity. LA. R.S. 15:1352 C.

In this case, the State filed a bill of information on August 26, 2016. The State alleges 73 overt act[s] committed on behalf of the alleged "enterprise" GOTM. Act 23 from the bill of particulars occurred on March 6, 2016. The bill of particulars does not indicate a five-year break between alleged overt acts committed on behalf of GOTM, thus not warranting a granting of a motion to quash.

### *Testimony at the Hearing*

Leland Laseter, a sergeant with the Abbeville Police Department, testified that he was the lead investigator in the case. He described how various agencies worked to put together paperwork upon which the indictment was based. He agreed there were no wiretaps, confessions, or information given as to the structure or organization of the alleged criminal enterprise. All of the criminal conduct which was listed in the indictment was gathered from separate police reports. Sergeant Laseter agreed that the last overt act listed for Defendant occurred in March 2008. However, Sergeant Laseter stated that while it was not listed in the indictment, in his investigative notes he had a report that Defendant was seen firing a gun in Abbeville on March 16, 2016, and according to the report, the shooting was still under investigation. When questioned about the details of the alleged March 2016 shooting, Sergeant Laseter had no further information.

5

The hearing continued with several co-defendants adopting Defendant's motion to quash the indictment. All of the co-defendants' counsel sought the same information—in what manner or how did the alleged overt acts further a criminal enterprise. The trial court allowed the State and defense counsels to submit briefs or supplemental briefs and the hearing was continued.

Sergeant Laseter again took the stand at the subsequent hearing. The hearing continued with the discussion of whether the State's response to the bill of particulars was deficient because it simply reiterated the allegations set out in the indictment and did not establish the existence of the criminal enterprise. Sergeant Laseter was questioned in what manner the alleged overt acts furthered a criminal enterprise, answers of which the defendants claimed they were also entitled to via the bill of particulars. The State objected to that line of questions, stating the existence of a criminal enterprise was a question for the finder of fact as the information sought pertained to the merits of the allegations. However, the co-defendants and Defendant in the current writ asserted that they were being denied the right to prepare a defense to the allegations.

*Enterprise*

A defendant shall be informed of the nature and cause of the accusation against him. La.Const. art. I, § 13. That requirement is implemented by La.Code Crim.P. art. 464, which provides:

> The indictment shall be a plain, concise, and definite written statement of the essential facts constituting the offense charged. It shall state for each count the official or customary citation of the statute which the defendant is alleged to have violated. Error in the citation or its omission shall not be ground for dismissal of the indictment or for reversal of a conviction if the error or omission did not mislead the defendant to his prejudice.

6

An "enterprise," as defined by the Louisiana Racketeering Act, La.R.S. 15:1351 *et seq.*, "means any individual, sole proprietorship, partnership, corporation or other legal entity, or any unchartered association, or group of individuals associated in fact and includes unlawful as well as lawful enterprises and governmental as well as other entities." La.R.S. 15:1352(B). The existence of an enterprise is an essential element to the crime of racketeering. La.R.S. 15:1353(D).

In brief, Defendant argues:

Not one co-defendant has given any form of statement alleging the existence of an enterprise, nor does the state have possession of any wire tape recordings which suggest an enterprise, with structure and control over members of the enterprise. The report is merely an accumulation of various reports of individuals who are known to be friends or neighborhood acquaintances, and who are alleged to have committed criminal acts at various times in their respective lives.

Louisiana Revised Statutes 15:1352 defines racketeering, in pertinent part, as follows:

A. As used in this Chapter, "racketeering activity" means committing, attempting to commit, conspiring to commit, or soliciting, coercing, or intimidating another person to commit any crime that is punishable under the following provision of Title 14 of the Louisiana Revised Statutes of 1950, the Uniform Controlled Dangerous Substances Law, or the Louisiana Securities:

. . . .

C. "Pattern of racketeering activity" means engaging in at least two incidents of racketeering activity that have the same or similar intents, results, principals, interrelated by distinguishing characteristics and are not isolated incidents, provided at least one of such incidents occurs after August 21, 1992 and that the last of such incident occurs within five years after a prior incident of racketeering activity.

Count 1 of the indictment in this case alleged that the defendants were members of an organization engaged in various criminal activities, historically associated in Abbeville, Louisiana, focused primarily in an area south of Charity Street. While operating mostly in Vermilion Parish, the enterprise also operated in Lafayette and Calcasieu Parishes. The indictment listed the criminal purpose,

means, and methods of the enterprise known as G.O.T.M. (Get it out the Mudd), and the subsets, "Southside" or "Green Street," also referred to as "South Side Gang."

In count 2, the indictment lists all the members who interacted with each other and others to conduct or participate in the enterprise through a pattern of racketeering activity in violation of La.R.S. 15:1353(D). The indictment alleged the enterprise commenced in March 2002 and remained active until the date of the indictment. The indictment listed seventy-three overt acts committed by fourteen members. It set out individual criminal acts by dates and descriptions and alleged that the acts were committed in furtherance of a racketeering conspiracy and accomplished the goals of the conspiracy. It named the individuals who committed those acts as a part of the criminal enterprise.

In count 3, the indictment alleged Defendant belonged to or associated with a criminal street gang from March 2002 and:

> [C]ontinuing on or about the date on the return of the Indictment before this court for the benefit of, at the direction of, or in association with a Criminal Street Gang, who's primary activities include the commission of murder, Attempted Murder, Aggravated assault by Drive By shooting, Robbery, Burglary, Intimidation of Witnesses, and the sale, transportation, manufacturing and/or offering of Controlled Dangerous Substances within Vermilion, Lafayette, and Calcasieu to promote, assist or further the affairs of the Criminal Street Gang. La.R.S. 15:1403.

As noted above, for the purpose of a motion to quash the indictment, the allegations made in the indictment must be considered as true, and if true, they must establish the existence of an enterprise. At the hearing, the State referred to this court's ruling in *State v. Diggs*, 17-161 (La.App. 3 Cir. 4/26/17) unpublished opinion, *writ denied*, 17-899 (La. 9/29/17), 227 So.3d 287, wherein the defendants, who were indicted for racketeering and participating in a criminal street gang, asserted that the indictment must be quashed for the failure to allege facts which showed an "enterprise" as required in La.R.S. 15:1353(D). As in the current case,

8

the defendants in *Diggs* contended the indictment posed no facts to suggest the defendants even knew each other, and the indictment was merely a recitation of alleged acts of unrelated individuals. This court denied writs finding no error in the trial court's ruling concerning the sufficiency of the indictment.

In the current case, regarding whether the State's response to Defendant's bill of particulars was sufficient, in *State v. Winston*, 97-1183, pp. 9-10 (La.App. 3 Cir. 12/9/98), 723 So.2d 506, 511, *writ denied*, 99-205 (La. 5/28/99), 743 So.2d 659, this court noted:

> The purpose of a bill of particulars is to provide an accused with sufficient information as to the nature and cause of the offense with which he is charged. *State v. Wiggins*, 518 So.2d 543 (La.App. 5 Cir.1987); *writs denied,* 530 So.2d 562 (La.1988) and 569 So.2d 979 (La.1990); *State v. Frith*, 436 So.2d 623 (La.App. 3 Cir.), *writ denied*, 440 So.2d 731 (La.1983); La.Code Crim.P. art. 484. It is now clear that the constitutional provision, La. Const. art. 1, § 13, requiring that a defendant be informed of the nature and cause of the accusation is not to be restricted to mean that he must be so informed by indictment; the defendant may also be informed of the facts by bill of particulars. *State v. Griffin,* 495 So.2d 1306 (La.1986); *see also State v. Gainey*, 376 So.2d 1240 (La.1979).
>
> A defendant is entitled to know the alleged method of the commission of an offense when several means of commission of an offense are specified by the statute. *State v. Huizar,* 414 So.2d 741 (La.1982). However, a motion for a bill of particulars is not a method for a defendant to obtain the state's evidence. La.Code Crim.P. art. 484; *State v. Gray,* 351 So.2d 448 (La.1977). It is a tool for a defendant to become informed about the nature and cause of the charge against him. La.Code Crim.P. art. 484; *State v. Huizar*, 332 So.2d 449 (La.1976). The bill of particulars may not be used to discover the details of the evidence, that is, to know "exactly how," the state intends to prove its case. *State v. Walker*, 344 So.2d 990 (La.1977). There is no formula regarding the information the State must make available. The extent to which particulars are granted depends on the nature and complexity of the case. *State v. Miller*, 319 So.2d 339 (La.1975). Reversible error occurs when there is a failure to provide a defendant information "of the nature and cause of the accusation against [him]." *State v. Atkins*, 360 So.2d 1341, 1344 (La.1978), *cert. denied,* 441 U.S. 927, 99 S.Ct. 2041, 60 L.Ed.2d 402 (1979).

In its ruling, the trial court noted that the "overt acts committed are alleged to be committed by a criminal enterprise and not an individual." The trial court noted that pursuant to the indictment, there were fourteen members within the enterprise and seventy-three alleged overt acts between the first alleged act committed in March 2002, and the last alleged overt act committed in January 2016, and was "within five years after a prior incident of racketeering activity." A review of the indictment shows that at least one overt act occurred yearly from 2002 to 2016. Referring to *U.S. v. Turkette*, 452 U.S. 576, 101 S.Ct. 2524 (1981), the trial court noted that the Supreme Court stated specifically that, "An 'enterprise' is not a 'pattern of racketeering activity' but is an entity separate and apart from the pattern of activity in which it engages." Noteworthy, pursuant to the language of La.R.S. 15:1352(C), as stated above, a "'[p]attern of racketeering activity' means engaging in at least two incidents of racketeering activity . . . provided at least one of such incidents occurs after August 21, 1992 and that the last such incidents occurs within five years after a prior incident of racketeering activity." This suggests that the offense of racketeering may have a built-in time limitation in which to establish an individual's participation in a criminal enterprise, should the enterprise exist.

In *H.J. Inc. v. Northwestern Bell Telephone Co.*, 492 U.S. 229, 239, 109 S.Ct. 2893, 2900 (1989), the Supreme court, while discussing racketeering and the concept of "pattern," noted:

> The legislative history, which we discussed in *Sedima, supra*, 473 U.S., at 496, n. 14, 105 S.Ct., at 3285, n. 14, shows that Congress indeed had a fairly flexible concept of a pattern in mind. A pattern is not formed by "sporadic activity," S.Rep. No. 91–617, *supra*, p. 158 (1969), and a person cannot "be subjected to the sanctions of title IX simply for committing two widely separated and isolated criminal offenses," 116 Cong. Rec., at 18940 (1970) (Sen. McClellan). Instead, "[t]he term 'pattern' itself requires the showing of a relationship" between the predicates, *ibid.,* and of "'the threat of continuing activity,'" *ibid.,* quoting S.Rep. No. 91–617, at 158. "It is this factor of *continuity plus relationship* which combines to produce a

10

pattern." *Ibid.* (emphasis added). RICO's legislative history reveals Congress' intent that to prove a pattern of racketeering activity a plaintiff or prosecutor must show that the racketeering predicates are related, *and* that they amount to or pose a threat of continued criminal activity.

The Supreme Court further stated:

> A party alleging a RICO violation may demonstrate continuity over a closed period by proving a series of related predicates extending over a substantial period of time. Predicate acts extending over a few weeks or months and threatening no future criminal conduct do not satisfy this requirement: Congress was concerned in RICO with long-term criminal conduct. Often a RICO action will be brought before continuity can be established in this way. In such cases, liability depends on whether the *threat* of continuity is demonstrated. See S.Rep. No. 91-617, at 158.

*Id.* at 242.

Considering that the purpose of a sufficient indictment is to provide a defendant with adequate notice of the crime for which he is charged so that he can properly prepare his defense and considering the above jurisprudence, the trial court did not err when it denied Defendant's motion to quash which alleged the indictment was insufficient to allow Defendant to prepare a defense.

*Prescription*

Louisiana Code of Criminal Procedure Article 572, which addresses the limitation on the prosecution of non-capital offenses, provides in pertinent part:

> A. Except as provided in Articles 571 and 571.1, no person shall be prosecuted, tried, or punished for an offense not punishable by death or life imprisonment, unless the prosecution is instituted within the following periods of time after the offense has been committed:

> (1) Six years, for a felony necessarily punishable by imprisonment at hard labor.

Defendant argues that even if there was a criminal enterprise, he cannot be prosecuted as a participant in the enterprise for the reason that the last overt act listed in the indictment was in March 2008, a little more than eight years prior to the filing

11

of the indictment.[1]  Defendant argued at the hearing and in brief to this court that because the alleged overt act was committed in March 2008 and because La.Code Crim.P. art. 572(A)(1) provides that prosecution must commence within six years of the date of the offense, the prosecution was not timely instituted, and he could not be charged absent an exception to the running of the time limitations.  Defendant argues that neither the State nor the trial court addressed this issue at the hearing, in the State's response brief, or by the trial court in its ruling.

Defendant is correct in that the last alleged overt criminal act has prescribed; however, in its ruling, the trial court, while not stating so expressly, reasoned that Defendant was not being charged with the March 2008 overt act but with the current offenses of conspiracy to commit racketeering, racketeering, and participating in a criminal street gang.  The crimes of which Defendant is being charged have not prescribed.  The trial court did not err in denying Defendant's motion to quash alleging that the expiration of the time limitation to prosecute on the overt acts excluded him from the indictment.

### Criminal Street Gang Activity/La. R.S. 15:1403

As for count 3 of the indictment, criminal street gang activity, Defendant never raised the issue of whether the eight-year lapse from the date of his last overt act absolved him from participation in or on behalf of a street gang.  Nor did the trial court specifically address the separate charge of participation in a criminal street gang on the issue of prescription.  Furthermore, whether the alleged overt act listed in count 2 had prescribed is not applicable to this case in that La.R.S. 15:1403 is a sentencing enhancement statute in a situation where criminal street gang activity

---

[1]"Act 7 – On or about March 28, 2008, **Cody Ficklen** did commit the crime of Possession with Intent to Distribute a Schedule 11, CDS."

12

results in a conviction. *See State v. Sandifer*, 15-590 (La.App. 4 Cir. 4/20/16), 195 So.3d. 119.

**CONCLUSION**

The indictment adequately informs Defendant of the nature and cause of the accusations against him and is sufficient to allow him to prepare a defense. Further, Defendant is not being charged with the last overt act but with the current offenses of conspiracy to commit racketeering, racketeering, and participating in a criminal street gang. The crimes of which Defendant is being charged have not prescribed pursuant to La.R.S. 15:1352(C). Finally, whether the last overt act committed by Defendant has prescribed is not applicable to the charge of criminal street gang activity in that La.R.S. 15:1403 is a sentencing enhancement statute in a situation where street gang activity results in a conviction. Accordingly, there was no error in the trial court's denial of Defendant's June 1, 2017, Motion to Quash, or his June 29, 2017, First Amended Motion to Quash.

**WRIT DENIED.**