NOT DESIGNATED FOR PUBLICATION

STATE OF LOUISIANA
COURT OF APPEAL, THIRD CIRCUIT

22-722

STATE OF LOUISIANA

VERSUS

JASON LEE LOPEZ

\*\*\*\*\*\*\*\*\*\*

APPEAL FROM THE
FOURTEENTH JUDICIAL DISTRICT COURT
PARISH OF CALCASIEU, NO. 3155-21
HONORABLE KENDRICK J. GUIDRY, DISTRICT JUDGE

\*\*\*\*\*\*\*\*\*\*

LEDRICKA J. THIERRY
JUDGE

\*\*\*\*\*\*\*\*\*\*

Court composed of D. Kent Savoie, Candyce G. Perret, and Ledricka J. Thierry, Judges.

AFFIRMED.

Stephen C. Dwight
District Attorney
Post Office Box 3206
Lake Charles, LA 70601
(337) 437-3400
COUNSEL FOR APPELLEE:
    State of Louisiana

**David S. Pipes**
**Assistant District Attorney**
**901 Lakeshore Drive**
**Lake Charles, LA   70601**
**(337) 437-3400**
**COUNSEL FOR APPELLEE:**
     **State of Louisiana**

**Douglas Lee Harville**
**Louisiana Appellate Project**
**Post Office Box 52988**
**Shreveport, LA   71135**
**(318) 222-1700**
**COUNSEL FOR DEFENDANT/APPELLANT:**
     **Jason Lee Lopez**

**THIERRY, Judge.**

Defendant, Jason Lee Lopez, was convicted of manslaughter, in violation of La.R.S. 14:31, and racketeering, in violation of La.R.S. 15:1353. He was sentenced to forty years at hard labor for the manslaughter conviction and twenty years at hard labor for the racketeering conviction, to run consecutively and without the benefit of probation, parole, or suspension of sentences. He now appeals his convictions, alleging that the trial court erred in several respects, specifically, in that the State failed to prove Defendant would have committed or would have planned to commit any future crimes in Louisiana, thereby not proving beyond a reasonable doubt that Defendant was guilty of racketeering; that Defendant's constitutional right to confront the witnesses against him was violated when the State asked substantive questions of Boyd Hagood, who invoked his Fifth Amendment rights; and that the trial court's ordering of Defendant to serve the maximum sentence for manslaughter consecutively to a twenty-year racketeering sentence was excessive. For the reasons that follow, we affirm.

## FACTUAL AND PROCEDURAL HISTORY

On August 2, 2017, the body of Dustin Hammons was found. On January 28, 2021, Defendant, Jason Lee Lopez, was charged with second degree murder of Dustin Hammons, in violation of La.R.S. 14:30.1, and racketeering, in violation of La.R.S. 15:1353.

On February 10, 2022, Defendant proceeded to trial. Through the evidence and testimony, the following facts were adduced. At the time of Hammons' death, Defendant was a member of the Aryan Brotherhood of Texas ("ABT"). The ABT assigned Defendant (also known as "Kasper") to assist Boyd Hagood (also known

1

as "Lurch") in his methamphetamine operation in and around Houston, Texas. Defendant provided services as an enforcer and debt collector, among other things. The deceased, Hammons, was employed by Hagood as part of the drug distribution network. Hammons was suspected of stealing from Hagood's car.

Ashlyn Brown testified at trial. Brown knew Hagood because she lived with him and Hammons. Brown also knew Defendant, as he would show up to Hagood's house and run errands with him. Brown believed the men went out to pick up money from people, and she admitted to seeing the men together with drugs.

On August 1, 2017, Brown, Defendant, Hagood, and Hammons traveled from Texas to Louisiana to allegedly collect money. Brown testified that tensions escalated on the drive to Louisiana, with Defendant hitting Hammons and taking Hammons' phone from him. At one point, Hammons tried to run away on foot during a stop. He was subdued and put back in the car. Brown stated that after returning to the car, Hammons begged for his life and asked not to be killed. Brown also testified that she saw Defendant make Hammons hold his hand and said, "You're my bitch."

Brown testified that the vehicle stopped in a wooded area, and Hagood and Defendant walked Hammons in the woods. Hammons was forced to remove his shirt and consume drugs before Hagood and Defendant shot him multiple times. Brown heard Hammons screaming out "I'm still alive," followed by a second series of gunshots. Hagood and Defendant returned to the vehicle without Hammons. The deceased body of Hammons was discovered the next day on August 2, 2017, with the autopsy revealing ten gunshot wounds, bruises and scrapes.

2

Brown testified that she initially did not tell the truth to the police, as she was scared for her life. She stated she sent a letter to Defendant telling him not to worry because she was afraid he might hurt her family.

As to Hammons' phone, which Brown testified had been taken by Defendant, Detective Travis Lavergne testified that Hammons' phone had traveled from Houston into Calcasieu Parish then back to Texas. Lavergne confirmed that the phone ping locations were consistent with a route taken from Houston to the location where the victim's body was found.

In Defendant's statement to the police, Defendant said that as far as he knew, Hagood killed Hammons. Defendant said he never had a weapon nor did he have any problems with Hammons.

After trial, a jury found Defendant, Jason Lee Lopez, guilty of manslaughter and racketeering, and the trial court sentenced Defendant to forty years imprisonment at hard labor for a manslaughter conviction and twenty years of imprisonment at hard labor for the racketeering conviction. The court denied Defendant's motion to reconsider the sentence. Defendant now appeals, raising three assignments of error.

## ANALYSIS

**ERRORS PATENT:**

In accordance with La.Code Crim.P. art. 920, all criminal appeals are reviewed for errors patent on the face of the record. After reviewing the record, we find no errors patent.

**ASSIGNMENT OF ERROR NUMBER ONE:**

In Defendant's first assignment of error, he argues the State failed to prove beyond a reasonable doubt that he was guilty of racketeering. In so doing, he raises

issues as to the sufficiency of the evidence regarding racketeering. In *State v. Hearold*, 603 So.2d 731, 734 (La.1992), the supreme court held:

> When issues are raised on appeal both as to the sufficiency of the evidence and as to one or more trial errors, the reviewing court should first determine the sufficiency of the evidence. The reason for reviewing sufficiency first is that the accused may be entitled to an acquittal under *Hudson v. Louisiana,* 450 U.S. 40, 101 S.Ct. 970, 67 L.Ed.2d 30 (1981), if a rational trier of fact, viewing the evidence in accordance with *Jackson v. Virginia,* 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979) in the light most favorable to the prosecution, could not reasonably conclude that all of the essential elements of the offense have been proved beyond a reasonable doubt. When the entirety of the evidence, including inadmissible evidence which was erroneously admitted, is insufficient to support the conviction, the accused must be discharged as to that crime, and any discussion by the court of the trial error issues as to that crime would be pure dicta since those issues are moot.

> On the other hand, when the entirety of the evidence, both admissible and inadmissible, is sufficient to support the conviction, the accused is not entitled to an acquittal, and the reviewing court must then consider the assignments of trial error to determine whether the accused is entitled to a new trial. If the reviewing court determines there has been trial error (which was not harmless) in cases in which the entirety of the evidence was sufficient to support the conviction, then the accused must receive a new trial, but is not entitled to an acquittal even though the admissible evidence, considered alone, was insufficient. *Lockhart v. Nelson,* 488 U.S. 33, 109 S.Ct. 285, 102 L.Ed.2d 265 (1988).

This Court in *State v. Kennerson*, 96-1518, p.5 (La.App. 3 Cir. 5/7/97), 695 So.2d 1367, 1371 reiterated this standard and further explained:

> It is the role of the fact finder to weigh the respective credibility of the witnesses, and therefore, the appellate court should not second guess the credibility determinations of the triers of fact beyond the sufficiency evaluations under the *Jackson* standard of review. *See State ex rel. Graffagnino*, 436 So.2d 559 (*citing State v. Richardson*, 425 So.2d 1228 (La.1983)). In order for this Court to affirm a conviction, however, the record must reflect that the state has satisfied its burden of proving the elements of the crime beyond a reasonable doubt.

Therefore, the record must show that the State proved all the elements beyond a reasonable doubt. The Louisiana Racketeering Act is encompassed in

4

La.R.S. 15:1351-1356. Louisiana Revised Statutes 15:1353 details the prohibited activities. Under La.R.S. 15:1353(C), "[i]t is unlawful for any person employed by, or associated with, any enterprise knowingly to conduct or participate in, directly or indirectly, such enterprise through a pattern of racketeering activity." Under La.R.S. 15:1352(B), an "enterprise" means "any individual, sole proprietorship, partnership, corporation, or other legal entity, or any unchartered association, or group of individuals associated in fact and includes unlawful as well as lawful enterprises and governmental as well as other entities."

As indicated in *State v. Davenport*, 16-223 (La.App 4 Cir. 10/18/17), 316 So.3d 888, *writ denied*, 17-1950 (La. 10/8/18), 253 So.3d 792, *and writ denied*, 17-1947 (La. 10/8/18), 253 So.3d 797, Louisiana appellate courts have looked to federal jurisprudence interpreting the federal Racketeer Influenced and Corrupt Organizations Act (RICO) since Louisiana racketeering laws were modeled after RICO. Referencing the United States Supreme Court, the fourth circuit explained that an association-in-fact enterprise must have a structure with at least three features: a purpose, relationships among the associates, and longevity sufficient to permit the associates to pursue the enterprise's purpose.

Under La.R.S. 15:1352(A), "racketeering activity" means "committing, attempting to commit, conspiring to commit, or soliciting, coercing, or intimidating another person to commit" specific crimes. Some of the specific crimes include: second degree murder, second degree kidnapping, money laundering, manufacture/distribution of Schedule II controlled dangerous substances, simple robbery, and theft, among others. La.R.S. 15:1352. Under La.R.S. 15:1352(C), a "[p]attern of racketeering activity" is defined as:

5

engaging in at least two incidents of racketeering activity that have the same or similar intents, results, principals, victims, or methods of commission or otherwise are interrelated by distinguishing characteristics and are not isolated incidents, provided at least one of such incidents occurs after August 21, 1992, and that the last of such incidents occurs within five years after the prior incident of racketeering.

In *United States v. Daidone*, 471 F.3d 371, 374-75 (2d Cir. 2006), the federal second circuit noted the requirements to prove a "pattern of racketeering activity":

> Since the enactment of RICO, this Court has afforded the term "pattern of racketeering activity" a "generous reading," *United States v. Indelicato,* 865 F.2d 1370, 1373 (2d Cir.1989) (en banc), and has "interpreted [it] to mean 'multiple racketeering predicates-which can be part of a single 'scheme'-that are related and that amount to, or threaten the likelihood of, continued criminal activity,' " *United States v. Reifler,* 446 F.3d 65, 91 (2d Cir.2006) (noting that evidence of a defendant's ties to organized crime is admissible to prove a RICO offense) (quoting *United States v. Coiro,* 922 F.2d 1008, 1016 (2d Cir.1991)). The Supreme Court has held that "to prove a pattern of racketeering activity a . . . prosecutor must show that the racketeering predicates are related, *and* that they amount to or pose a threat of continued criminal activity." *H.J. Inc.,* 492 U.S. at 239, 109 S.Ct. 2893. Because Daidone does not challenge continuity, only relatedness is at issue in this case.

> According to the Supreme Court, criminal conduct forms a pattern of racketeering activity under RICO when it "embraces criminal acts that have the same or similar purposes, results, participants, victims, or methods of commission, or otherwise are interrelated by distinguishing characteristics and are not isolated events." *Id.* at 240, 109 S.Ct. 2893 (internal quotation marks omitted). This Court has further developed this requirement of "relatedness," holding that predicate acts "must be related to each other ('horizontal' relatedness), and they must be related to the enterprise ('vertical' relatedness)." *United States v. Minicone,* 960 F.2d 1099, 1106 (2d Cir.1992). To show that the predicate acts are vertically related to the RICO enterprise, the government must establish (1) that the defendant "was enabled to commit the predicate offenses solely by virtue of his position in the enterprise or involvement in or control over the affairs of the enterprise," or (2) that "the predicate offenses are related to the activities of that enterprise." *Id.* (internal quotation marks and emphasis omitted). One way to show that predicate acts are horizontally related to each other is to show that each predicate act is related to the RICO enterprise. *United States v. Polanco,* 145 F.3d

536, 541 (2d Cir.1998) ("A predicate act is related to a different predicate act if each predicate act is related to the enterprise."). Accordingly, the requirements of horizontal relatedness can be established by linking each predicate act to the enterprise, although the same or similar proof may also establish vertical relatedness. *See id.* (establishing horizontal relatedness by showing predicate acts are related to the enterprise); *Minicone,* 960 F.2d at 1106 (establishing vertical relatedness by showing predicate offenses are related to enterprise).

In other words, the State had to prove that Defendant was employed by or associated with an enterprise and knowingly conducted or participated within the enterprise through a pattern of racketeering activity, with such activity meaning committing, attempting to commit, or conspiring to commit specific crimes. The record shows that the State proved all the elements beyond a reasonable doubt.

First, the evidence clearly showed that Defendant was associated with an enterprise, namely the ABT. This was established by the witnesses' testimony and Defendant's own admission. Defendant acknowledged that he was a part of the ABT and worked with Hagood in a methamphetamine operation for the benefit of Hagood and the ABT. The jury heard testimony from an investigator, John Roscoe, who said he was very familiar with this gang. He said the ABT was the most documented gang in Montgomery County, that there were more members in this county than anywhere else, and that his investigations into this gang had led him all across Texas as well as the country. Roscoe confirmed the ABT would work with other outlaw organizations or gangs to complete tasks they were unwilling to commit. Roscoe testified that the ABT would assign members to be "gopher[s]" for drug distributors and that ABT also had "blind faith commitments" where lower-tier gang members had to complete whatever illegal task was asked of them by their ranking supervisor. Roscoe confirmed the ABT had specific gang tattoos, and there was testimony that Defendant's tattoos were consistent with the ABT.

7

Roscoe further testified that members of the ABT have identifying marks, subscribe to white supremacy and the racist writings of Davis Lane, and adhere to a motto about securing the gang's existence. Roscoe testified that the ABT's motto is to "secure the existence of our people and a future for white children." Roscoe testified that he came into contact with members of this gang through normal criminal activity such as thefts, assaults, robberies, burglaries, and other criminal activities.

It is our opinion that the State presented clear evidence of the structure and purpose of the ABT. The testimony showed that the members would follow the orders of their superiors to achieve their common goal. The record reflects that the State presented sufficient evidence detailing the ABT's relationship among associates and their plans for longevity, including committing crimes to acquire funds. The testimony established that Hagood oversaw various underlings, including Hammons, and would direct them to make runs. These runs consisted of acquiring drugs, exchanging drugs for money, or picking up money owed to the gang. The evidence revealed and Defendant acknowledged that he worked with Hagood for the benefit of the ABT. The various text messages showed that Hagood and Defendant were working together to achieve those goals. For these reasons, the State properly established that the ABT was an "enterprise" and that Defendant was associated with this enterprise.

Second, Defendant admitted to committing one of the specific crimes suggestive of a pattern of racketeering activity. Defendant concedes that he was assigned to assist Hagood in his methamphetamine operation in and around Houston, Texas. Additionally, the evidence showed that Hagood and Defendant kidnapped Hammons when they placed him in the vehicle, ordered him back into

the vehicle after stopping, attacked him while he was in the vehicle, and brought him to Louisiana where he was ultimately killed.[1] During the course of this drive, Defendant physically took Hammons' phone from him, and there was testimony that Defendant was armed with a handgun. The State also established the required elements for second degree kidnapping under La.R.S. 14:44.1, since Hammons was brought into Louisiana, made to get out of the car, and shot repeatedly.[2]

The final requirement is that the two incidents of racketeering activity must be interrelated, involve similar intents, methods of commission, victims, principals, or otherwise be interrelated. In the instant case, there was evidence that Hammons was directly involved in the drug distribution operation and either stole drugs and other items from Hagood or became aware of certain activities involving the disappearance of another drug runner who allegedly stole drugs. Hagood believed his drug operation was impacted or compromised because of Hammons' actions, so Hagood and Defendant responded by kidnapping and killing him. These instances of racketeering activity are not isolated instances but rather are related and a cause and effect of each other. Thus, the State presented sufficient evidence of racketeering.

---

[1]Under La.R.S. 14:26, criminal conspiracy is defined as:

[T]he agreement or combination of two or more persons for the specific purpose of committing any crime; provided that an agreement or combination to commit a crime shall not amount to a criminal conspiracy, unless in addition to such agreement or combination, one or more of such parties does an act in furtherance of the object of the agreement or combination.

[2]Under La.R.S. 14:44.1, relevant to this instant case, kidnapping is:

(1) The forcible seizing and carrying of any person from one place to another.
(2) The enticing or persuading any person to go from one place to another.
(3) The imprisoning or forcible secreting of any person.
(4) The forcible seizing of any corrections officer or any other official or employee of an adult or juvenile correctional or detention facility for any period of time whatsoever.

Despite all of the evidence supporting Defendant's racketeering conviction, Defendant sets forth an argument based on the location of future crimes. Defendant claims that the State failed to prove he would have committed or would have planned to commit any future crimes in Louisiana; therefore, the State failed to prove he was guilty of racketeering. While Defendant submits he is a member of the ABT, he said his involvement in such was limited to Texas, except for the one day in Louisiana when Hammons was killed. Defendant asserts the State presented no evidence that he and Hagood stayed in Louisiana for any length of time beyond that necessary to drive Hammons from the Louisiana-Texas border to where Hammons was killed and then drive back to the border. Defendant argues the State presented no evidence that he had any other business or personal connection to Louisiana, that he had been to Louisiana before Hammons' murder, or that there was any reason to believe he would have returned to Louisiana in the future had he not been arrested.

Defendant directs this court's attention to *State v. Ficklen*, 17-995, p. 11 (La.App. 3 Cir. 5/2/18), 247 So.3d 1075, 1082, where this court recognized that the legislative intent behind racketeering laws was to prohibit and punish conduct that "amount[s] to or pose[s] a threat of continued criminal activity." Defendant notes that in the indictment, the State alleged he engaged in racketeering by committing crimes of conspiracy to distribute methamphetamine, conspiracy to commit money laundering, conspiracy to commit second degree kidnapping, conspiracy to commit simple robbery, conspiracy to commit second degree murder, and theft of property having value of less than $1,000.00. Defendant argues that no distribution of methamphetamine or money laundering was alleged to have occurred in Louisiana, to have been anticipated over a period of time in Louisiana, or to have been

10

planned in Louisiana. Defendant submits that the State arguably offered proof of a conspiracy to commit armed robbery, second degree murder, and kidnapping which occurred in Louisiana; however, Defendant asserts there was no evidence that these crimes lasted or were expected to last for more than one day. Defendant argues there was no evidence that he would have committed any future crimes in Louisiana had he not been arrested. For these reasons, Defendant argues the State failed to prove beyond a reasonable doubt that he was guilty of racketeering. Thus, he claims his sentence must be vacated.

To the contrary, the State argues Defendant's assignment of error is without merit because the commission or intent to commit "future crime" in a specific location is not an element of the crime of racketeering. The State notes it alleged that Defendant, while working as part of a criminal enterprise known as the ABT, committed or conspired to commit various criminal acts sufficient to constitute racketeering in violation of the Louisiana Racketeering Act. The State argues that, under La.Code Crim.P. art. 611, if any act or event constituting part of the racketeering occurred in Calcasieu Parish, then the entire racketeering crime is deemed to have occurred in Calcasieu Parish, including the actions taken and those contemplated to be taken in Texas.[3]

The State further notes that Defendant's reliance on *Ficklen*, 247 So.3d 1075, is misplaced, as that court noted that while federal jurisprudence interpreting racketeering law did envision a pattern of racketeering activity existing over a period of time, such was in the context of distinguishing the pattern of activity

---

[3]Louisiana Code of Criminal Procedure Article 611 provides that, "If acts constituting an offense or if the elements of an offense occurred in more than one place, in or out of the parish or state, the offense is deemed to have been committed in any parish in this state in which any such act or element occurred."

from the enterprise itself. The State argues that no jurisprudence suggested a geographical limitation to the pattern of racketeering behavior or that the mandates of La.Code Crim.P. art. 611 would not apply.

The State further asserts Defendant acknowledged the State presented evidence of conspiracy to commit robbery, murder, and kidnapping within Louisiana. The State suggests Defendant made no attempt to claim that his activities with Hagood did not constitute a pattern of racketeering activity or that the ABT was not an "enterprise" under the statute. The State posits that Defendant ignores the fact that since at least one element occurred in Calcasieu Parish, the entire racketeering crime is deemed to have occurred in Louisiana. Therefore, the State argues that when viewing the evidence in the light most favorable to the prosecution, it is clear that a rational trier of fact could have found every element of the racketeering charge to have been proven beyond a reasonable doubt.

When viewing the racketeering offense as a whole, one of the incidences occurred in Texas while the other occurred in Louisiana. Pursuant to La.Code Crim.P. art. 611, we find that since one part of the offense occurred in Louisiana, the entire offense is deemed to have occurred in Louisiana.

Furthermore, this court previously made a ruling in this case on a similar issue. In *State v. Lopez*, 22-76 (La.App. 3 Cir. 2/8/22) (unpublished opinion), this court found the trial court erred in granting the defense's motion to quash the racketeering charge based on the same or similar arguments:

> **WRIT GRANTED AND MADE PEREMPTORY:** The State seeks review of the trial court's February 7, 2022 ruling on Defendant's "Motion to Quash Indictment for Lack of Jurisdiction." The trial court granted the motion in part and denied the motion in part as to the racketeering charge against Defendant. Louisiana Code of Criminal Procedure Article 611 states, in pertinent part: "If acts constituting an offense or if the elements of an offense occurred in more than one

12

place, in or out of the parish or state, the offense is deemed to have been committed in any parish in this state in which any such act or element occurred." The trial court found it had jurisdiction over some elements of the racketeering offense. Considering this finding in accordance with La.Code Crim.P. art. 611, the trial court is deemed to have jurisdiction over the entire offense. Accordingly, the trial court erred in failing to deny Defendant's motion to quash in its entirety.

We echo this opinion and find Defendant's first assignment of error lacks merit.

**ASSIGNMENT OF ERROR NUMBER TWO:**

In Defendant's second assignment of error, he argues his constitutional right to confront the witnesses against him was violated when the State asked substantive questions of Hagood, who repeatedly refused to answer any questions.

Hagood could not invoke his Fifth Amendment rights because the State granted him immunity pursuant to La.Code Crim.P. art. 439.1.[4] *State v. Lopez*, 22-82 (La.App. 3 Cir. 2/10/22) (unpublished opinion). Defendant argues the State knew Hagood would invoke his Fifth Amendment rights but still persisted to question him. Because of this, Defendant argues his counsel was forced to attempt to engage in substantive questioning to try to undo the harm caused by the State's strategic questioning. Defendant claims that since his right to confront the witnesses was violated, his convictions and sentences must be reversed and vacated.

As a preliminary matter, the State claims that defense counsel did not preserve this issue for review under La.Crim. Code P. art. 841, as Defendant's

---

[4]Under La.Code Crim.P. art. 439.1(C):

The witness may not refuse to comply with the order on the basis of his privilege against self-incrimination, but no testimony or other information compelled under the order, or any information directly or indirectly derived from such testimony or other information, may be used against the witness in any criminal case, except a prosecution for perjury, giving a false statement or otherwise failing to comply with the order.

13

objections related to the trial court's interruption of Mr. Hagood's answers, rather than seeking limiting instruction, admonition, or mistrial due to the Fifth Amendment issue. However, viewing the record in its entirety, we find that the defense counsel's objections were sufficient to preserve this issue on appeal.

In support of this assignment of error, Defendant cites several cases, including *State v. Berry*, 324 So.2d 822, 830 (La.1975), *cert. denied*, 425 U.S. 954, 96 S.Ct. 1731 (1976), where the supreme court recognized "[i]t is improper conduct for either the prosecution or the defense to knowingly call a witness who will claim a privilege, for the purpose of impressing upon the jury the fact of the claim of the privilege." Defendant also directs this court's attention to *State v. Laviolette*, 06-92, p. 14 (La.App. 5 Cir. 9/26/06), 943 So.2d 527, 535, *writ denied*, 06-2585 (La. 5/18/07), 957 So.2d 149, in which the fifth circuit noted that it is reversible error when the "'the Government makes a conscious and flagrant attempt to build its case out of inferences arising from use of the testimonial privilege[.]'"

The State, in turn, points this court to *State v. Smith*, 96-261 (La.App. 3 Cir. 12/30/96), 687 So.2d 529, *writ denied*, 97-314 (La. 6/30/97), 696 So.2d 1004, and *Namet v. United States,* 373 U.S. 179, 83 S.Ct. 1151 (1963). In *Namet*, the supreme court held that reversible error can occur when a party "makes a conscious and flagrant attempt to build its case out of inferences arising from use of the testimonial privilege" or when "inferences from a witness' refusal to answer added critical weight to the prosecution's case in a form not subject to cross-examination, and thus unfairly prejudiced the defendant." *Id.* at 186-87.

In this case, the record shows that Mr. Hagood refused to answer any question by either side, resulting in findings of contempt of court and a jail

14

sentence. Mr. Hagood never invoked invoked his Fifth Amendment rights in the presence of the jury; instead, he simply refused to answer any question asked by either side. The State was put on notice at a pre-trial hearing that Hagood indicated he would refuse to answer questions, but the district attorney did not believe that Hagood could assert the privilege in light of the immunity. Thus, there is no evidence that the district attorney acted improperly.

Furthermore, Hagood's refusal to testify did not unfairly prejudice Defendant nor did it add critical weight to the State's case. The State only asked Hagood a handful of questions, while the defense asked over one hundred questions on a wide variety of topics, involving many facets of Hagood's operations. Only one of the State's questions referenced Defendant: "Mr. Hagood, you recall sending a text message to [Defendant], also known as Kasper, that Hammons was on his last leg right before you killed him?" The text message referred to was ultimately introduced into evidence through the testimony of the detectives who obtained a warrant for these messages and actually reviewed them. The State presented a strong case against Defendant with ample evidence against him, as the case against Defendant was made through Defendant's own confession as well as the testimony of witnesses who observed the various acts he committed.

As to whether Hagood's refusal to testify deprived Defendant of his right of confrontation, there was simply no testimony upon which to confront the witness. Hagood did not provide any information upon which the defense could have cross-examined him; nevertheless, the trial court allowed the defense to ask whatever questions counsel wished.

Thus, we find no merit to Defendant's argument.

**ASSIGNMENT OF ERROR NUMBER THREE:**

In Defendant's final assignment of error, he argues that the maximum forty-year sentence for manslaughter, along with the consecutive twenty-year sentence for racketeering, are excessive. Defendant asserts his sentences should be vacated and that this court should remand for resentencing.

In order for a sentence to violate La.Const. art. I, § 20, "the penalty must be so grossly disproportionate to the severity of the crime as to shock our sense of justice or that the sentence makes no measurable contribution to acceptable penal goals and, therefore, it is nothing more than needless imposition of pain and suffering." *State v. Hammock*, 97-1164, p. 5 (La.App. 3 Cir. 4/1/98), 711 So.2d 756, 758, *writ denied*, 98-1143 (La. 9/25/98), 726 So.2d 11; *see also State v. Campbell*, 404 So.2d 1205 (La.1981). This Court has held, that "in reviewing the defendant's sentences, the appellate court should consider the nature of the crime, the nature and background of the offender, and the sentences imposed for similar crimes." *State v. Soileau*, 13-770, 13-771, p. 5 (La.App. 3 Cir. 2/12/14), 153 So.3d 1002, 1005, *writ denied*, 14-452 (La. 9/26/14), 149 So.3d 261; *see also State v. Lisotta*, 98-648 (La.App. 5 Cir. 12/16/98), 726 So.2d 57, *writ denied*, 99-433 (La. 6/25/99), 745 So.2d 1183.

As to the nature of the crime, there is no doubt that Defendant was convicted of a cruel act. During sentencing, the trial court stressed that the killing of Hammons was a cowardly, brutal, and senseless act. The trial testimony revealed that Hammons screamed he was still alive, but the men went back and fired more rounds to finish him off. There was other testimony that the men forced Hammons to ingest drugs before making him remove his shirt and walk off into the woods where he was shot. In considering the sentencing guidelines, the trial court stated that anything less than a prison sentence would belittle the seriousness of the

16

crimes. The trial court noted Defendant's lack of remorse for his part in the killing as well as Defendant's response during his statement that he was refuting whether there was blood in the vehicle. The trial court found that the public needed to be protected from Defendant, and we agree.

Defendant also had a prior felony conviction in Texas, indicating that the present crimes before the court are not an outlier.

In comparing the sentences for similar crimes, it is clear that Defendant's sentence was appropriate. There are multiple examples of maximum sentences for manslaughter being affirmed on appeal, even in cases of first offenders or guilty pleas. *See State v. Hebert*, 12-228 (La.App. 3 Cir. 6/13/12), 94 So.3d 916, *writ denied*, 12-1641 (La. 2/8/13), 108 So.3d 78; *State v. Reder*, 19-373, 19-431 (La.App. 3 Cir. 12/18/19), 286 So.3d 644, *writ denied*, 20-216 (La. 7/24/20), 299 So.3d 74; *State v. Ayala*, 17-1041 (La.App. 3 Cir. 4/18/18), 243 So.3d 681.

As to the consecutive nature of Defendant's sentences, we find no merit in Defendant's arguments. Under La.Code Crim.P. art. 883, if a defendant is convicted of two or more offenses based on the same action or common scheme, then the imprisonment shall be served concurrently unless the court directs otherwise. Other sentences are to be served consecutively, unless the court expressly directs otherwise. The trial court found that the two convictions (the manslaughter and the racketeering charge) were separate and apart, and thus under La.Code Crim.P. art. 883, it was entirely appropriate for the trial court to sentence Defendant consecutively rather than concurrently. Furthermore, as discussed above, Defendant engaged in a substantive history of violent, criminal acts as a part of his racketeering activity, and the death of Hammons was cruel and brutal. We find no merit in this assignment of error.

17

**DECREE**

For the foregoing reasons, Defendant Jason Lee Lopez's convictions and sentences are affirmed.

**AFFIRMED.**

This opinion is NOT DESIGNATED FOR PUBLICATION.
Uniform Rules—Courts of Appeal, Rule 2-16.3.